USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 6/28/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
SUPERIOR ENERGY SERVICES
COLUMBIA S.A.S. and SUPERIOR ENERGY
SERVICES, INC.,

                          Petitioners,

-against-

PREMIUM PETROLEUM SERVICES S. DE
R.L., VICTOR AUGUSTO PALACIO
GAITAN, and MARIA EUGENIA
HERNANDEZ ROJAS,

                          Respondents.
------------------------------------------------------------x

18-CV-7704 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., District Judge:**

Superior Energy Services Columbia S.A.S ("Superior Columbia") and Superior Energy Services, Inc. ("Superior Energy") (collectively, "Superior") petition this Court for an order confirming the final arbitral award entered against Premium Petroleum Services S. de R.L. ("Premium Petroleum"), Victor Augusto Palacio Gaitan ("Mr. Palacio"), and Maria Eugenia Hernández Rojas ("Ms. Hernández") (collectively, "Premium"). In turn, Premium petitions this Court for an order vacating the final arbitral award, citing undue means and violations of public policy.

## PROCEDURAL HISTORY

Superior filed a Petition to Confirm Arbitration ("Petition to Confirm") on August 23, 2018. ECF Nos. 1-4. On October 24, 2018, the Parties stipulated and agreed to Premium's filing of a Petition to Vacate the Arbitral Award ("Petition to Vacate") and a corresponding briefing schedule. ECF No. 13. In accordance with that schedule, Premium filed a Response to the Petition to Confirm as well as a Petition to Vacate on October 24, 2018. ECF Nos. 14-16.

Superior filed a Reply in support of their Petition to Confirm in addition to an Opposition to Premium's Petition to Vacate on November 12, 2018. ECF Nos. 18-19.

Both the Petition to Confirm and the Petition to Vacate are deemed fully briefed. After careful consideration, Premium's Petition to Vacate is hereby **DENIED**. Superior's Petition to Confirm is hereby **GRANTED**.

## BACKGROUND[1]

Premium Petroleum is a company organized under the laws of Panama, which was the sole owner of Ingeniería y Tecnología de Servicios S.A.S ("ITS"). Edwards Decl. Ex. A, ¶ 85 ("Award"). ITS provides cementation services to the oil and gas industry in Columbia. *Id.* ¶ 88. Mr. Palacio founded ITS in 2007. *Id.* ¶ 87. Mr. Palacio is married to Ms. Hernández who is part owner of Petrodynamic Petroleum Services S.A.S. ("Petrodynamic"), another company operating in the oil and gas industry. *Id.* ¶ 89. Petrodynamic was a supplier to ITS. *Id.* Also situated within the oil and gas industry, Superior Energy is a Houston-based company that manufactures a wide range of drilling equipment. *Id.* ¶ 90.

In 2012, Mr. Palacio and Ms. Hernández decided to sell ITS. *Id.* ¶ 92. After extensive negotiations with multiple interested parties, Mr. Palacio and Ms. Hernández agreed to sell ITS to Superior Energy for $28 million ($28,000,000). *Id.* ¶¶ 92-94. The Parties exchanged multiple drafts of a Sales Purchase Agreement ("SPA") and ultimately agreed to excluded Petrodynamic from the sale. *Id.* ¶¶93-94. Additionally, Mr. Palacio signed an Employment Agreement with Superior Energy. *Id.* ¶ 95. Due to Mr. Palacio's prior involvement with Petrodynamic, the exclusion of Petrodynamic was accompanied by a non-compete period outlined in Section 10.17 of the SPA. *Id.* Ultimately, the Parties executed the SPA on March 1, 2013. *Id.* ¶ 96. On

---

[1] The facts in this case are largely undisputed. Thus, the facts are predominately drawn from Petitioner's Petition, the accompanying Memorandum or Law, and the Final Award. ECF Nos. 1-3.

September 17, 2014, Superior Energy was notified of potential failures to comply with the SPA. *Id.* ¶ 103-04. Specifically, Mr. Palacio continued to be involved with Petrodynamic despite the non-compete language in the SPA. *Id.* The Parties attempted to resolve the dispute on their own, but those negotiations were unsuccessful. *Id.* ¶¶ 107-09. Pursuant to the SPA, Premium filed a request for arbitration on January 22, 2016. *Id.* ¶ 110.

In a 130-page decision, issued on July 19, 2018, the arbitrating body (the "Tribunal") issued a Final Award. *See* Award. Among other things, after evaluating a considerable compilation of evidence, the Tribunal determined that Mr. Palacio breached both Section 6(a) and Section 10.17(b) of the SPA by way of his continued involvement with Petrodynamic, which ran afoul of the non-compete language contained within the SPA. *Id.* ¶¶ 452, 468. In calculating damages, the Tribunal first determined that Superior was entitled to withhold the Second Holdback Amount (totaling $1,250,000) initially contemplated by the SPA – an action Superior took upon learning of potential breaches. *Id.* ¶ 520. Second, the Tribunal determined that a twenty percent (20%) downward adjustment of the purchase price (totaling $5,600,000), also contemplated by the SPA, was appropriate in light of the Mr. Palacio's breach of section 10.17 of the SPA. *Id.* ¶¶ 530-32. Thus, the Tribunal awarded Superior a twenty percent (20%) reduction in the purchase price minus the previously withheld Second Holdback Amount. *Id.* ¶ 545. In sum, the Tribunal awarded Superior $4,507,165.33. *Id.*

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") states, in part:

> "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable . . ."

9 U.S.C. § 2. The FAA serves to ensure that disputes are settled efficiently, and that drawn-out and costly litigation is avoided. *See Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993). Chapter 2 of the FAA, which codifies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), governs "any commercial arbitral agreement, unless it is between two United States Citizens, involves property located in the United States, and has no reasonable relationship with one or more foreign states." *Stone & Webster, Inc. v. Triplefine Intern. Corp.*, 118 Fed.Appx. 546, 549 (2d Cir. 2004) (quoting *Yusuf Ahmed Alghanim & Sons W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997)). There is a "strong public policy in favor of international arbitration," thus rendering review of arbitral awards as "very limited." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005).

Under both the FAA and the New York Convention, an arbitrator's decision is given "substantial deference," and an arbitrator must simply provide a "colorable justification" for the outcome reached. *Yusuf Ahmed*, 126 F.3d at 23 (citing *In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 94 (2d Cir. 1988)); *Albtelecom SH.A v. UNIFI Communications, Inc.*, 2017 WL 2364365, *4 (S.D.N.Y. May 30, 2017) (citing *Landy Michaels Realty Corp. v. Local 32B-32J, Serv Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992)). In other words, the confirmation of an arbitration award is typically a summary proceeding. *See Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984).

Absent an order vacating, modifying, or correcting an award, the district court "must grant" the award. 9 U.S.C. § 9. "The party opposing enforcement of an arbitral award [pursuant to the New York Convention] has the burden to prove that one of the seven defenses under the

4

New York Convention applies."[2] *Telenor Mobile Communications AS v. Storm LLC*, 584 F.3d 396, 504 (2d Cir. 2009) (internal citations omitted). That burden, however, is heavy, and the "showing required to avoid summary confirmance is high." *Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007).

## DISCUSSION

Premium's Petition to Vacate the Final Award rests primarily on three grounds: (1) Premium was unable to fully present its case; (2) the Tribunal manifestly disregarded the terms of the SPA; and (3) the Final Award was contrary to public policy. Resp't Pet. Vacate, ECF No. 16 ("Resp't Pet.").

### I. Premium Fully Presented Its Case to the Tribunal

As stated, Article V(1)(b) of the New York Convention provides a defense to a petition to confirm an arbitration award if the party against whom the award is invoked was "unable to present" their case. Premium claims that it was denied the opportunity to fully present its case for two reasons. First, Premium contends that Superior impermissibly contacted Premium's "only non-party witness, which caused the witness not to testify ..." Resp't Pet. p. 8. However, the same argument was put forth during the arbitration, and the Tribunal expressly considered those issues during the underlying proceedings. Award ¶¶ 188-206. The Tribunal stated:

> "The Tribunal finds it is not acceptable nor justified for a high-ranking employee of [Superior] to approach one of [Premium's] witness (sic) right before his live examination at the Hearing, with the prospects of future business opportunities, because to a reasonable person this implies an inducement to favor the person making the offer of new business. When such an inducement is knowingly offered to someone who is about to serve

---

[2] The seven defenses include: (1) incapacity of the parties or invalidity of the agreement; (2) lack of proper notice or inability to present the case; (3) the arbitral decision is beyond the scope of the agreement; (4) the flawed composition of the arbitral procedure; (5) the award is not yet binding or has been set aside; (6) the dispute is not of an arbitrable nature; and (7) the recognition or enforcement of the award would be contrary to the public policy of that country. *See* New York Convention, Art. V(1)-(2).

5

> as an adverse witness in an arbitration hearing, it is prima facie evidence of an attempt to interfere in the proceedings."

*Id.* ¶ 203. After expressing its "serious dismay" in the conduct of Parties, the Tribunal addressed the second of Premium's two contentions – that the Tribunal was unable to consider the full testimony of the witness. After noting the misconduct, the Tribunal granted Petroleum's requests and indicated that "it received and did not exclude any witness testimony and documentary evidence offered by Petroleum relating to the issues on which Mr. Villamarin testified in his witness statement." *Id.* ¶ 205. Ultimately, the Tribunal admitted Mr. Villamarin's witness statement in its entirety and denied Superior an opportunity to cross examine that testimony. *Id.* ¶ 206.

The Tribunal expressly considered the misconduct by Superior's employee, adequately and fairly addressed the issue and any potential negative consequences, and granted Petroleum's sought-after relief. *Id.* ¶¶ 203-206. This Court cannot say that the Tribunal abused its discretion in considering and addressing this issue. On the facts presented, Petroleum was fully able to present its case, and any interference with its witness or any alternative method of testimony desired does not present a basis for vacatur in the instant case.

## II. The Tribunal Did Not Disregard the Terms of Section 10.17(e) of the SPA

Aside from the defenses outlined in the New York Convention, as well as additional grounds for vacatur explicitly provided for by the FAA, "an arbitral decision may be vacated when an arbitrator has exhibited a manifest disregard of the law." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208-09 (2d Cir. 2002) (quoting *Wilko v. Swan*, 346 U.S. 427, 436 (1952)). Courts have applied the "manifest disregard" standard to contractual interpretation as well. *See Benihana, Inc. v. Benihana of Tokyo, LLC*, 2016 WL 3913599, at *11 (S.D.N.Y. July 15, 2016) (citing *Yusuf Ahmed*, 126 F.3d at 25). Vacatur for manifest disregard of contractual

6

terms applies only under two circumstances: (1) if the arbitral award contradicts an express and unambiguous term of the contract; or (2) if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract. *See Westerbeke*, 304 F.3d at 222.

Here, Petroleum claims that the Tribunal disregarded and express term of the SPA – Section 10.17(e). Resp't Pet. p. 11. Section 10.17(e) states:

> "The provisions of this clause are intended solely to preserve and fairly reflect the value of the transferred industrial secrets or goodwill in order to allow Purchase to fairly and successfully expand and enhance ITS' business in Columbia. If the provisions of this [Section] are deemed too broad for that purpose by an authority of competent jurisdiction, such provisions shall nevertheless be valid and enforceable to the extent that the court deems necessary for such protection."

SPA § 10.17(e). Petroleum argues that the Tribunal "acknowledged, and proceeded to ignore" the plain language of the SPA. Resp't Pet p. 11. Petroleum cites to Section 10.17(e) and seems to indicate that, at some point, it argued to the Tribunal that the terms previously negotiated by the Parties were "too broad." *Id.* Petroleum suggests that the Tribunal was aware of the complaints, yet chose to adhere to the terms of 10.17(e) nonetheless.[3] *Id.*

Petroleum does not contest the Tribunal's finding of a breach of the SPA. *See* Resp't Pet. In calculating damages, the Tribunal expressly contemplated Section 10.17(c):

> "The Tribunal notes that the breach of Section 10.17(b) of the SPA occurred while the Services Agreement was still in force and within the first year after the termination of the Employment Agreement that commences on July 30, 2013 and ends on July 30, 2015. Therefore, the Purchase Price must be adjusted downwards in 20%, according to Section 10.17[(c)](i)."

Award ¶ 528. In justifying its determination, the Tribunal went on to conclude that "the reduction in the Purchase Price required by Section 10.17(c) overlap[s] therefore with the

---

[3] Petroleum provides no further details as to its contentions and cites to no case law supporting its position.

compensation for the breaches of Section 6(a) that the Tribunal has found." *Id.* ¶ 539. Furthermore, the Tribunal emphasized that the reduction of the Purchase price was a number "negotiated and agreed upon by both parties before the SPA." *Id.* ¶ 540. In other words, rather than a "manifest disregard" of the terms of the SPA, the Tribunal carefully considered the terms negotiated by the Parties, determined they fairly represented the lost value resulting from the breach of the SPA, and rendered a Final Award in accordance with those terms. *See* Award. Once again, Petroleum has failed to demonstrate grounds supporting its request for vacatur.

### III. The Award is Not Contrary to Public Policy

Petroleum concludes by arguing that the Final Award is contrary to public policy because it functions as a punishment or penalty rather than appropriate damages. Resp't Pet. p. 13. Further, Petroleum contends that the Final Award is unconscionable and disproportionate. *Id.*

Article V(2)(b) of the New York Convention provides for vacatur if "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." Article V(2)(b) must be "construed very narrowly to encompass only those circumstances where enforcement would violate our most basic notions of morality and justice." *Telenor Mobile Communications AS v. Storm LLC*, 584 F.3d 396, 411 (2d Cir. 2009) (quoting *Europcar Isalia S.p.A v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998)). While there is a well-established policy of refusing to enforce penalty provisions in contracts in New York, courts have found that policy to be insufficient to sustain vacatur. *See PDV Sweeny, Inc. v. ConocoPhillips Co.*, 670 Fed.Appx 23, 24 (2d Cir. 2016).

Even if New York's penalty provision policy were sufficient grounds for vacatur, in the words of the Tribunal, "the reduction of the Purchase Price [by 20%] ... is a fair approximation of the anticipated impairment of the value of the ITS business when its purchaser Superior

Colombia does not receive the value of the asset paid for." *Id.* ¶ 540. In other words, the Final Award rendered precisely reflected the diminished value of ITS due to Mr. Palacio's breach. *Id.* ¶ 539. Premium points to no evidence indicating that the Final Award functions as a penalty. Aside from conclusory assertions, there is no support for the claims that the Final Award, calculated using terms negotiated by Petroleum, is a punishment for the breaches of the SPA. Rather, the Final Award put Superior back in the place it would have been had the product it received been worth the value it paid. As the Final Award was not contrary to any public policy, it is not grounds for vacatur.

## CONCLUSION

For the reasons set for above, Petroleum's Petition to Vacate the Award is hereby **DENIED**. Without a compelling reason to vacate, modify, or correct the Final Award, the Court must grant the Petition to Confirm. 9 U.S.C. § 9. As such, Superior's Petition to Confirm Arbitration is hereby **GRANTED**.

The Clerk of Court is respectfully directed to enter judgment in favor of Superior Energy Services Columbia S.A.S and Superior Energy Services, Inc., and against Premium Petroleum Services S. de R.L., Victor Augusto Palacio Gaitan, and Maria Eugenia Hernández Rojas in the amount of $4,507,165.33, and to close this case. Superior's request for post confirmation discovery is hereby **GRANTED**, pursuant to Federal Rule of Civil Procedure 96(a)(2).

Superior is directed to serve Petroleum with a copy of this order and to retain proof of service.

**SO ORDERED.**

**Dated:**     **June 28, 2019**
              **New York, New York**

                                              **ANDREW L. CARTER, JR.**
                                              **United States District Judge**